UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICK E. NOEL,                                     No. C-08-3777 EMC (PR)

       Petitioner,

       v.                                           **ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

GREG LEWIS, Warden,

       Respondent.

_____/

## I.   INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. § 2254 by a *pro se* state prisoner.  For the reasons stated herein, the petition is **DENIED**.

## II.   BACKGROUND

In 2005, a Mendocino County Superior Court jury convicted Petitioner of, *inter alia*, attempted murder, kidnapping, assault, and child endangerment, consequent to which Petitioner was sentenced to 41 years in state prison.  Petitioner was denied relief on state judicial review, with one exception.[1]  This federal habeas petition followed.

Evidence presented at trial shows the following.  In 2003, Petitioner, using a gun, forced his girlfriend, Raelene D., along with her four-year old daughter J.D., to drive him to Willits, California in her vehicle, a Mitsubishi Montero.  Raelene escaped from the car with her daughter before they reached Willits, and watched as Petitioner drove off in the Montero.  Petitioner drove to Willits

---

[1] On direct appeal, the state appellate court altered the judgment to reflect that one firearm enhancement should be served concurrently with other terms.  Ans., Ex. C5 at 1.

1   where he shot at his cousin Richard Noel from Raelene's vehicle.  The shot missed Richard, who

2   identified Petitioner as the shooter.  Petitioner, an admitted member of the Norteno gang, shot

3   Richard, who was not a member of any gang, out of a belief that he was a "snitch."  Ans., Ex. C5 at

4   2-3.

5          As grounds for federal habeas relief, Petitioner claims that (1) his right to due process was

6   violated because the evidence was insufficient to support his convictions[2] and the admission of gang

7   evidence violated his right to due process; (2) his right to due process was violated by the testimony

8   of an expert witness; (3) defense and appellate counsel rendered ineffective assistance[3]; (4) his rights

9   to due process and an impartial jury were violated by the use of a jury instruction and jury

10  misconduct.

**III.   STANDARD OF REVIEW**

12         This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

13  custody pursuant to the judgment of a State court only on the ground that he is in custody in

14  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

15  petition may not be granted with respect to any claim that was adjudicated on the merits in state

16  court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary

17  to, or involved an unreasonable application of, clearly established Federal law, as determined by the

18  Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

19  determination of the facts in light of the evidence presented in the State court proceeding."  28

20  U.S.C. § 2254(d).

21         "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

22  arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

23  state court decides a case differently than [the] Court has on a set of materially indistinguishable

24  facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable

25  application' clause, a federal habeas court may grant the writ if the state court identifies the correct

26  _____

27         [2]  This is a consolidation of claims 2-4 listed in the Order to Show Cause.

28         [3]  This is a consolidation of all Petitioner's ineffective assistance claims.

governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## IV.  **DISCUSSION**

A.    Sufficiency of the Evidence

Petitioner claims that the there was insufficient evidence to support his convictions for (1) attempted murder, (2) his gang participation and the sentencing enhancement (3) and child endangerment. Petitioner also claims that (4) the admission of gang evidence violated his right to due process.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Indeed, if confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne v. Borg*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *See Jackson*, 443 U.S. at 324.

1.    Attempted Murder

Petitioner claims that the evidence of the murderer's identity was equivocal and could also support a finding that he simply tried to scare Richard.

The state appellate court concluded that there was sufficient evidence to support the attempted murder conviction:

> The crime of attempted murder requires proof of intent to kill. [Citation omitted.] While intent can be inferred from the circumstances surrounding the incident, ultimately intent must be proved, and it cannot be inferred merely from the commission of another dangerous crime. [Citation and quotation marks omitted.] . . . .
>
> Substantial evidence supports the jury's verdict that [petitioner] is guilty of attempted murder. The victim, Richard, testified that on the night of the shooting he recognized Raelene D.'s Montero and recognized [petitioner] as the driver. Richard is the [petitioner]'s cousin, and he has known [petitioner] his whole life. Although Richard did not see the face of the shooter at the precise moment of the shooting, there is no evidence anyone else was in the Montero. A shell casing was found in the rear of the Montero in a location consistent with the driver shooting a weapon out the rear-passenger window. When Richard reached a place of safety, he immediately identified the shooter as his cousin Patrick, the [petitioner]. Richard's testimony is alone sufficient to support the jury's verdict. [Citation omitted.] [Footnote omitted.] Richard's testimony is corroborated by [petitioner]'s possession of the Montero earlier on the day of the shooting, the discovery of the pistol in the Montero, and [petitioner]'s admission to Raelene D. in the early morning hours following the shooting that he had shot at Richard. The jury's finding that [petitioner] was the shooter is supported by substantial evidence. [Footnote omitted.]
>
> Substantial evidence also supports the conclusion that [petitioner] had the intent to kill. [Petitioner] contends the evidence is insufficient because he did not utter any threat and because Richard was not hit by the bullet. This is not dispositive. The evidence at trial showed that on the night of November 26, [petitioner] drove past Richard on the street, turned the Montero around and came right back toward him, and fired at Richard from such close range that Richard felt the bullet pass by his neck. [Citation omitted.] [Petitioner] then confessed to Raelene D. a few hours later that he had tried to kill Richard. The [petitioner]'s challenge to the sufficiency of evidence to support a jury verdict of attempted murder thus fails. [Footnote omitted.]

Ans., Ex. C5 at 5-7.

Here, a rational trier of fact could find the elements of attempted murder true beyond a reasonable doubt. As the state appellate court pointed out, the jury could infer the intent to kill and the identity of the shooter from Richard's testimony that he saw Petitioner fire a gunshot at him from the Montero. Richard's identification of the shooter's identity was further was corroborated by Raelene's testimony regarding Petitioner's use of the Montero. Petitioner's assertion that the

United States District Court

For the Northern District of California

1    evidence was equivocal or could support different inferences is unavailing.  As noted above, this

2    Court must assume that the trier of fact resolved any conflicts in favor of the prosecution.  The

3    Court's sole inquiry is whether the jury's verdict was fairly supported by the record.  Because the

4    verdict was so supported, this Court's inquiry is at an end.  Accordingly, the claim is DENIED for

5    want of merit.

6          2.      Gang Participation Conviction and Sentencing Enhancement

7          Petitioner claims that the evidence was insufficient to support his conviction for gang

8    participation and for the gang sentencing enhancement, as indicated by the success of his new trial

9    motion.  At trial, the following evidence of Petitioner's gang affiliation and enhancement was

10   presented:

11              The People called police officer Michael Globe to testify at trial as a
                gang expert.  He gave background information about the Norteno

12              street gang. Among other things, Officer Globe testified that members
                of the Norteno gang typically wear red clothing, carry red bandanas,

13              and have tattoos, including representations of the number 14, because
                "N" is the 14th letter of the alphabet. Globe testified that in his

14              opinion [petitioner] was a member of the Nortenos. He based his
                opinion on the fact that in November 2002 [petitioner] admitted to

15              Officer Globe that he was a Norteno; that during this 2002 encounter
                [petitioner] wore a red sweatshirt, red belt, and red bandana; and that

16              [petitioner] had various tattoos that identified him as a Norteno.  In
                particular, [petitioner] had a tattoo of the number 14; a one-dot and a

17              four-dot tattoo that together represent the number 14; and a tattoo of
                the letters "WSK[,]" [ ] short for "Willits Scrap Killers."  Globe

18              testified that "Willits" signifies the city of Willits and "scrap" is a
                derogatory term for a member of the rival Sureno gang. The

19              expression "WSK" thus refers to killing Surenos.

20              Globe further testified that a gang member can earn "respect" from his
                gang in many ways, including committing crimes for the promotion of

21              the gang, or "creating a fear in society and the fear against Sureno
                gang members." [Footnote omitted.]  Even if a [petitioner] committed

22              a violent crime by himself, the gang would benefit because "when
                people find out what you did, the gang finds out what you did, the

23              rival gang members find out what you did, it creates the fear to others
                and it gives you respect from within the gang that this person is

24              willing to do anything and die for whatever cause they believe in
                dying for."  Officer Globe explained that in the gang world, if "you

25              attempt to kill or shoot at a snitch because he's a snitch-which in the
                gang culture and in the criminal culture is less than a person, because

26              they're not a stand-up person, because in a sense they're ratting out the
                other guys-killing that person or attempting to kill that person would

27              gain respect within the gang" and give the perpetrator "almost [ ] a
                higher status" within the gang for his efforts.  Globe was of the

28              opinion that when [petitioner] shot at Richard he was benefiting the

United States District Court

For the Northern District of California

> Norteno gang because [petitioner] believed Richard was a snitch and snitches are disdained in gang culture. Even if Richard were not a member of a gang (and there was no evidence that he was), a crime committed by a Norteno against an ordinary citizen could benefit the Norteno gang.

Ans., Ex. C5 at 4-5. Richard Noel and Raelene D. also testified that they had heard petitioner identify himself as a Norteno. *Id.* at 5.

The state appellate court concluded that the jury's verdict was supported by substantial evidence, and rejected Petitioner's claim:

> We conclude that substantial evidence supports the conclusion that the shooting at Richard was for the benefit of the Nortenos. The evidence at trial, including [petitioner]'s admissions, his tattoos, and gang expert Officer Globe's testimony, showed that [petitioner] was a member of the Nortenos. Officer Globe explained that the color red was associated with the Nortenos, and the night of the shooting a pistol was discovered on the front seat of the Montero partially covered by a red bandana. Raelene D. testified that [petitioner] told her he attempted to kill Richard because Richard had snitched on him. Officer Globe explained that attempting to kill a snitch would enhance [petitioner]'s status within the gang and would benefit the gang by instilling fear in the community.

Ans., Ex. C5 at 13.

California Penal Code § 186.22(a) ("Participation in criminal street gang"), a substantive offense, reads:

> Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years.

The gang participation sentencing enhancement (*id.* § 186.22(b)(1)) reads in relevant part:

> any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, [receive additional years on his sentence] in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted[.]

The state appellate court reasonably concluded that a rational trier of fact could find the elements of the substantive offense and the sentencing enhancement true beyond a reasonable doubt.

As the state appellate court pointed out, the jury could infer (1) from Officer Globe's testimony that Petitioner was a gang member, and (2) from Raelene's testimony that he wanted to kill Richard in order to benefit the gang by disposing of a snitch.

B.      Admission of Gang Evidence

        This claim relates to the admission of gang participation evidence.  Following a preliminary hearing, Petitioner was charged with gang participation (Cal. Pen. Code 186.22(a)), and a gang sentencing enhancement (Cal. Pen. Code § 182.22 (b)(1)).  Prior to trial, Petitioner moved under Cal. Penal Code § 995 to dismiss the charge and the enhancement because there was no reasonable or probable cause that the attempted murder had been committed for the benefit of a street gang.[4] The trial court denied the § 995 motion, and the jury convicted Petitioner of both the charge and the enhancement.  After conviction, Petitioner moved for a new trial.  The trial court granted such motion as to the gang enhancement.

        Here, Petitioner's general claim is that the trial court violated his right to due process by denying his § 995 motion.  This claim is premised on two contentions.  First, Petitioner contends that the attempted murder charge cannot be the basis for the gang participation charge because he did not commit the crime in conjunction with another gang member.  According to the Petitioner, in order to sustain the gang participation charge, the prosecutor must show that Petitioner assisted a gang member in committing a felony other than the attempted murder.  Second, Petitioner contends that the success of his new trial motion shows that the gang participation evidence was insufficient. The state appellate court rejected Petitioner's claims, and upheld the trial court's denial of the § 995 motion:

> [Petitioner] also argues that because there was no testimony at the preliminary hearing that [petitioner] 'aided and abetted a separate felony committed by gang members' [citation removed], as a matter of law the substantive gang charge could not be sustained.  This argument is premised on a misunderstanding of the statute and the case law.  As we noted previously, the gang-related felony required to sustain the gang participation charge can be a charged offense committed by [petitioner]; the prosecution need not show that

---

[4]  Under § 995 the accused can move to dismiss the information or indictment on grounds that he has been committed or indicted without reasonable or probable cause.

United States District Court

For the Northern District of California

> [petitioner] aided a separate felony committed by another gang member.
> . . . .
>
> [Also,] the fact that the trial court ultimately found that the prosecution did not prove the truth of the gang enhancements beyond a reasonable doubt does not mean that there was no probable cause at the time of the section 995 motion.

Ans., Ex. C5 at 11, 12.

Petitioner's claim lacks merit. First, as to his contention, this Court is bound by the state appellate court's interpretation of its laws. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Under its interpretation of the gang participation charge, as noted above, there was sufficient evidence to support the charge. Second, Petitioner's claim is denied insofar as it is based on the trial court's denial of his § 995 motion. Section 995 creates state, not federal, rights. Federal habeas relief is unavailable for violations of state law, even if state law were erroneously interpreted or applied. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011). Furthermore, under the state court's interpretation of the gang enhancement law, the allegations were sufficient to survive a § 995 motion. Accordingly, Petitioner's claim is DENIED for want of merit.

As to the Petitioner's argument that his successful new trial motion demonstrates the lack of evidence supporting the gang enhancement, the state appellate court concluded that Petitioner misreads the import of his successful new trial motion:

> Unlike a trial court considering a motion for a new trial, in deciding whether substantial evidence supports a verdict this court does not independently reweigh the evidence. [Citation omitted.] Instead, we consider whether any rational trier of fact could have found proof beyond a reasonable doubt. [Citation omitted.] The trial court's decision to grant the motion for a new trial with respect to the enhancement indicates that a rational trier of fact could conclude that the prosecution failed to prove beyond a reasonable doubt that the shooting was gang-related, but it does not show that no rational trier of fact could conclude to the contrary. Although the trial court concluded there was insufficient evidence of gang-relatedness under his independent review of the evidence, our review is more deferential to the jury's verdicts.

*Id.* at 15.

Thus, the state appellate court also reasonably determined that the trial court's ruling was not dispositive of the issue because such ruling did not show that <u>no</u> rational trier of fact could have

1   found Petitioner guilty.  Because the record shows that a rational juror could find the elements of the

2   crime true beyond a reasonable doubt, this Court's inquiry is at an end.  Accordingly, the claim is

3   DENIED for want of merit.

4   C.     <u>Child Endangerment</u>

5          Petitioner claims that there was insufficient evidence to support his convictions on two

6   counts of child endangerment.  The first conviction was based on evidence that Petitioner held a

7   pistol to Raelene's leg while he insisted that he "wanted to drive the fucking car."  Ans., Ex. C5 at

8   16.  The second conviction was based on evidence that 40 minutes before the incident just described,

9   Petitioner pulled out a pistol and fired a shot in the car's floor, screaming "If you don't believe me,

10   I'll fucking end it now."  *Id.*  Petitioner contends that the evidence shows a continuous course of

11   conduct, rather than two separate offenses.  The state appellate court rejected this claim on state law

12   grounds:

13                    [Petitioner] does not dispute that each of the two incidents endangered
                  [the child] . . . However, [he] concedes that child endangerment may
14                    be charged as a continuous course of conduct *or* as a single act.
                  [Citation omitted.]  In this case the People opted to prove two separate
15                    acts of child endangerment, each occurring on the same day, and the
                  jury unanimously agreed that [petitioner] committed each act.
16                    [Petitioner] cites no authority for the position that the People in this
                  case could not choose to charge two separate acts and that [petitioner]
17                    could not be convicted of both counts.  [Under state law,] [petitioner]
                  here could properly be convicted of two counts of child endangerment
18                    despite the general similarity and temporal proximity of the acts.

19   Ans., Ex. C5 at 16, 17.

20          First, this Court is bound by the state appellate court's interpretation of its laws, *Richey*, 546

21   U.S. at 76, and therefore must deny relief on this ground.  Second, the 40 minute separation between

22   the pistol incidents shows that there was evidence on which a juror could find that Petitioner

23   committed two acts of child endangerment.  Accordingly, the claim is DENIED.

24   D.     <u>Expert Testimony and Jury Instruction Regarding Bullet Shell Evidence</u>

25          The police searched the Montero, returned it to Raelene, and then conducted a second search

26   of the car.  On this second search, the police recovered a bullet shell casing in a remote recess of the

27   car.  During trial, hypothetical questions regarding bullet trajectories were asked of an expert

28   witness, and the trial court gave a standard expert witness jury instruction.  Defense counsel made

United States District Court
For the Northern District of California

1   no objection to either the questions or the instruction.  Petitioner contends that the delay in finding

2   the casing shows that there was a break in the chain of custody, necessitating the exclusion of the

3   evidence.  Accordingly, the hypothetical questions and the jury instruction were impermissible and

4   deprived him of a fair trial.  Petitioner presented this claim only on state habeas review.

5          Petitioner is not entitled to habeas relief on this claim.  First, the claim is procedurally

6   defaulted under the contemporaneous-objection rule, defense counsel having failed to object at trial.

7   *See Coleman v. Thompson*, 501 U.S. 772, 749-50 (1991), and *Paulino v. Castro*, 371 F.3d 1083,

8   1092-93 (9th Cir. 2004).  Second, Petitioner has failed to show prejudice.  There was sufficient other

9   evidence to support the conclusion that Petitioner had and used a gun and that he intended to kill

10  Richard with it – including the testimony of the victims, Richard and Raelene.  Given the strength of

11  this evidence, Petitioner has not shown that the casing evidence or instruction had a substantial and

12  injurious effect or influence in determining the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S.

13  619, 638 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Accordingly,

14  Petitioner's claim is DENIED.

15  E.      Assistance of Counsel

16         Petitioner claims that defense counsel rendered ineffective assistance by failing to request an

17  entrapment jury instruction, to investigate an alleged conspiracy to frame him, investigate witnesses

18  and evidence, and to move to change venue.  Petitioner further claims that appellate counsel

19  rendered ineffective assistance by failing to raise a "*Brady* [v]iolation on direct appeal."  As to the

20  question of entrapment or that there was cause to change venue, Petitioner has failed to provide any

21  evidence, and the record is bare of any such evidence.  Failure to identify such information is a

22  failure to show that trial counsel's performance was deficient, or that the alleged deficiency resulted

23  in prejudice, the necessary showing to sustain an ineffective assistance claim.  *See Gallego v.*

24  *McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997).  As to the question of investigating witnesses and

25  evidence, Petitioner's claim is without merit.  In many instances, Petitioner simply asserts that

26  defense counsel failed to contact various witnesses.  He fails, however, to state what information

27  these witnesses might have offered and how the failure to question such witnesses resulted in

28  prejudice.  As to the other witnesses, the testimony they might have offered was of slight value, and

United States District Court

For the Northern District of California

1    it not plausible that counsel's failure to make use of it had an adverse affect on the jury's verdict.

2    Even an investigator hired by Petitioner's mother concluded after his investigation that, "it seems

3    that there are few avenues for [petitioner's] appeal." Pet.'s Mot. to Life Stay, Attachment R at 4.

4    The question of venue is discussed in Section F of this order.

5         As to the question of a conspiracy and the related *Brady* claim, Petitioner makes a rather

6    incoherent claim that Raelene, Richard, and Nathaniel Simmerson, a person uncovered during the

7    police investigation, conspired to frame Petitioner. Simmerson apparently alleged to police that

8    Petitioner, while wearing a red bandana, once pointed a gun at him. A gun and a red bandana were

9    later found in the Montero a few hours later. Petitioner construes these facts as evidence that

10   Raelene, Richard, and Nathanial conspired to frame him with the charges at issue in this petition.

11   He further contends that the government failed to disclose a deal it made with Nathanial to dismiss

12   criminal charges. Simmerson was mentioned during the preliminary hearing, but no evidence

13   regarding him was presented at trial.

14        Petitioner's allegations are insufficient to show that a conspiracy existed, let alone that there

15   was sufficient evidence to support a claim that the government failed to disclose material evidence.

16   Simply put, his allegations fail to connect Raelene and Richard to the alleged conspiracy, and he has

17   failed to show any evidence to support his other contentions. Petitioner, then, has not shown that

18   defense or appellate counsel's performance fell below an objective standard of reasonableness and

19   that there is a reasonable probability that, but for counsel's unprofessional errors, he would have

20   prevailed at trial or on appeal. *Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989) (citing

21   *Strickland v. Washington*, 466 U.S. 686, 694 (1984)).

22        Petitioner also asserts that defense counsel was ineffective for failing to present evidence that

23   Richard and Raelene used methamphetamine, and that their use of it adversely affected their ability

24   to accurately perceive events. Whatever the truth of this assertion, Petitioner has not shown

25   evidence to support it. Petitioner has not shown evidence that these witnesses were using a

26   sufficient amount of any intoxicant near to the time of the events that their perception and

27   recollection abilities were adversely affected. Petitioner, then, has not shown that defense counsel

28   rendered ineffective assistance. Furthermore, defense counsel did ask Raelene whether she had used

1   intoxicants near to the time of the shooting.  She denied any such use.  Ans., Ex. B at 54.

2   Accordingly, Petitioner's ineffective assistance claims are DENIED.

3   F.      Juror Misconduct and Venue

4           Petitioner claims that the jurors made comments during deliberations that Petitioner was of

5   Native American ancestry.  He also claims that defense counsel rendered ineffective assistance in

6   not moving for a change of venue because of a (supposed) prejudice against Native Americans in

7   Mendocino County.  Petitioner has not provided any evidence to show which jurors made such

8   comments, that such comments were in fact made, or that a bias existed against Native Americans in

9   Mendocino County sufficient to prevent him from having "a panel of impartial, 'indifferent'

10  jurors,'"  *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988) (quoting *Irvin v. Dowd*, 366 U.S.

11  717, 722 (1961)).  Such a conclusion defeats any claim that defense counsel rendered ineffective

12  assistance.  Because there is no evidentiary support for Petitioner's assertions, his claims are

13  DENIED.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

## V.   <u>CONCLUSION</u>

The state court's adjudication of Petitioner's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is **DENIED**.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  His motion for a certificate of appealability (Docket No. 33) is **DENIED**. Petitioner may seek a certificate of appealability from the Court of Appeals.

This order disposes of Docket No. 33.  The Clerk shall enter judgment in favor of Respondent, and close the file.


IT IS SO ORDERED.


Dated:  May 10, 2012

_____
EDWARD M. CHEN
United States District Judge